2007 UT App 390

**Nicole H. CODE fka Nicole L. Handrahan, Plaintiff and Appellant,**

v.

**UTAH DEPARTMENT OF HEALTH and Utah School for the Deaf and Blind, Defendants and Appellees.**

No. 20050255–CA.

Court of Appeals of Utah.

Dec. 13, 2007.

Brad C. Smith and Benjamin C. Rasmussen, Ogden, for Appellant.

Mark L. Shurtleff, Brent A. Burnett, and J. Clifford Petersen, Salt Lake City, for Appellees.

Before Judges BENCH, McHUGH, and ORME.

ORME, Judge:

¶ 1 The latest chapter of this appeal [1] concerns the contractual employment rights of a probationary public employee. Nicole H. Code challenges the trial court's dismissal of her amended complaint for "failure to state a claim upon which relief can be granted." Utah R. Civ. P. 12(b)(6). We affirm.

¶ 2 After approximately thirty-two months of employment with the Utah Department of Health (DOH), Code applied for employment with, and subsequently was transferred to, the Utah School for the Deaf and Blind (USDB). Like DOH, USDB is a state entity. Code, who has cerebral palsy, worked as a probationary employee at USDB for less than two months in September and October 2000 before USDB terminated her. In terminating her employment, USDB cited problems with her handwriting, mistakes in her work, and failure to attend to the telephone.

Nearly four years later, Code filed suit against DOH, alleging breach of contract and wrongful termination. She later amended her complaint to add USDB as a defendant. DOH then filed its motion to dismiss, which USDB joined after it was served with the amended complaint. DOH and USDB (Defendants) argued that Code's claims were statutory in nature and therefore governed by the provisions of the Personnel Management Act (PMA), Utah Code Ann. §§ 67–19–1 to –42 (2004 & Supp.2007).[2] As such, Defendants contended, Code's claims were barred by the three-year statute of limitations for statutory claims. See Utah Code Ann. § 78–12–26(4) (2002). They also argued that Code's failure to file a notice of claim as required under the Governmental Immunity Act (GIA), see id. § 63–30–12 (Supp.2003),[3] barred her action. The trial court granted the motion and dismissed the complaint.

¶ 3 On appeal, Code argues that the trial court erred in dismissing her complaint. She contends that because her claims are contractual, not statutory, a four-year statute of limitations period applies, see id. § 78–12–25(1) (2002), and the PMA and GIA do not. Thus, she asserts, her complaint is sufficient to overcome a rule 12(b)(6) motion to dismiss because she was not required to file her complaint within three years or to file a notice of claim. We review a trial court's ruling on a motion to dismiss for correctness, according no deference to the trial court.

1. This same appeal was before us last year. At that time, we dismissed the appeal for lack of subject matter jurisdiction, concluding that the appeal was untimely. See Code v. Utah Dep't of Health, 2006 UT App 113, ¶¶ 1, 7, 133 P.3d 438. The Utah Supreme Court reversed and returned the case to us for further consideration. See Code v. Utah Dep't of Health, 2007 UT 43, ¶ 2, 162 P.3d 1097.

2. Except as otherwise stated in footnote 3, we cite to the current version of the statutes in this decision for convenience, because the relevant statutory provisions have not been amended since the time of Code's termination or because an amendment enacted after such date does not affect our analysis.

3. In 2004, the GIA, Utah Code sections 63–30–1 to –38, was repealed by the Governmental Immunity Act of Utah. See Governmental Immunity Act of Utah, ch. 267, § 47, 2004 Utah Laws 1171, 1214–15. The Governmental Immunity Act of

Utah enacted sections 63–30d–101 to –904 and amended other provisions throughout the Utah Code that dealt with or referred to the GIA. See id. §§ 1–51, 2004 Utah Laws at 1171–1215 (current version codified at Utah Code Ann. §§ 63–30d–101 to –904 (2004 & Supp.2007)). The GIA continues to apply to all "injuries alleged to be caused by a governmental entity that occurred before July 1, 2004." See id. § 48(1), 2004 Utah Laws at 1215. Accordingly, we refer throughout this decision to the now-repealed section 63–30–12, which is applicable to this case. The last version of that provision, which had not been amended following Code's termination from public employment in 2000, appeared in the 2003 supplement. See id. § 63–30–12 amend. notes (Supp.2003). The current notice of claim requirements are found in Utah Code sections 63–30d–401 to –403. See id. § 63–30d–401 (Supp. 2007); id. §§ 63–30d–402, –403 (2004).

*See Buckner v. Kennard,* 2004 UT 78, ¶ 9, 99 P.3d 842.

■ ¶ 4 "A plaintiff is required, under our liberal standard of notice pleading, to submit a 'short and plain statement . . . showing that the pleader is entitled to relief' and 'a demand for judgment for the relief.'" *Canfield v. Layton City,* 2005 UT 60, ¶ 14, 122 P.3d 622 (quoting Utah R. Civ. P. 8(a)(1)-(2)) (omission in original). "The plaintiff must only give the defendant 'fair notice of the nature and basis or grounds of the claim and a general indication of the type of litigation involved.'" *Id.* (quoting *Williams v. State Farm Ins. Co.,* 656 P.2d 966, 971 (Utah 1982)).

¶ 5 For the breach of contract claim in her amended complaint, Code alleged that she "had an employment contract, arising from rights and responsibilities as set forth in the State Human Resources Employee Handbook," that she "performed her obligations under her employment contract," and that USDB "breached the employment contract by terminating [her] without sufficient notice and without affording her access to grievance and appeals procedures for permanent employees." For her wrongful termination claim, which she clarified at oral argument is another variant of her basic contract theory, she alleged that her "physical disability was a cause of her firing," in contravention of Utah's "strong public policy prohibiting discrimination against people with disabilities." The question for us is whether Code stated claims entitling her to relief.

■ ¶ 6 "[P]ublic employees' employment rights generally spring not from contract, but from legislative policy." *Knight v. Salt Lake County,* 2002 UT App 100, ¶ 8, 46 P.3d 247, *cert. denied,* 59 P.3d 603 (Utah 2002). Accordingly, "absent evidence of an agreement that altered or added to the terms and conditions of public employment included in the [PMA] and implementing regulations, a public employee's employment rights are statutory rather than contractual, and will be treated as claims in vindication of rights created by the [PMA]." *Id.* (citations and internal quotation marks omitted). "However, . . . circumstances may exist where the government voluntarily undertakes an additional

duty beyond its normal obligation to the employee, in which case an implied contract arises." *Canfield,* 2005 UT 60, ¶ 16 (citation and internal quotation marks omitted). While "personnel policy manuals . . . can create contractual rights," *Hom v. Utah Dep't of Pub. Safety,* 962 P.2d 95, 100 (Utah Ct.App. 1998), any contractual rights so created must be consistent with the underlying statutes. *See Buckner,* 2004 UT 78, ¶ 32 n. 4. "[A] manual's terms [can] not alter *or contradict* an employee's statutory rights[.]" *Id.* (emphasis added). *Accord Thurston v. Box Elder County,* 835 P.2d 165, 168 (Utah 1992).

■ ¶ 7 Defendants argue that the PMA contains provisions governing "how and why each category of state employee may be terminated" and how "claims of wrongful termination can be addressed." They also assert that section 34A–5–107(15) provides "the exclusive remedy under state law for employment discrimination based upon . . . disability." Utah Code Ann. § 34A–5–107(15)(i) (2005). If Defendants are correct, then any provisions contained within the State Human Resources Employee Handbook related to notice of termination, the use of grievance procedures, and discrimination must be consistent with those statutes in order to create additional contractual rights upon which Code can base her claims. If the handbook's provisions are inconsistent, then they are ineffectual, the statutes control, and Code is subject to the three-year statute of limitations period for statutory claims, *see id.* § 78–12–26(4) (2002); to the procedural requirements and remedies provided for in section 34A–5–107, *see id.* § 34A–5–107 (2005); and to the notice of claim provisions of the GIA, *see id.* § 63–30–12 (Supp.2003).

¶ 8 In her complaint, Code failed to identify any specific provisions of the State Human Resources Employee Handbook on which she relies. But her allegation that USDB breached its implied employment contract with her by terminating her "without sufficient notice" suggests that the handbook somehow grants probationary employees a contractual right to notice before termination. Similarly, her allegation that USDB breached its contract with her by terminating

her "without affording her access to grievance and appeals procedures for permanent employees" suggests that the handbook grants her, even though she was classified as a probationary rather than a permanent employee, the right to the grievance procedures available to permanent employees.

¶ 9 If, as Code alleges, the handbook actually does purport to grant those rights to her, those provisions are invalid because they would be contradictory to specific provisions of the PMA. *See Thurston,* 835 P.2d at 168. As to the availability to probationary employees of grievance procedures applicable to career service employees, the PMA specifically provides: "A person serving a probationary period *may not* use the grievance procedures provided in this chapter and in Title 67, Chapter 19a, Grievance and Appeal Procedures[.]" Utah Code Ann. § 67–19–16(6) (Supp.2007) (emphasis added). As to the claim that she had at least some right to pretermination notice before she could be fired, the PMA is, again, expressly to the contrary: "A person serving a probationary period ... may be dismissed *at any time* by the appointing officer without hearing or appeal." *Id.* (emphasis added).

¶ 10 The PMA also makes the state, its officers, and its employees subject to the provisions of section 34A–5–106 of the Utah Antidiscrimination Act. *See id.* § 67–19–4 (2004). That section prohibits an employer from discriminating on the basis of disability. *See id.* § 34A–5–106(1)(a)(i)(H) (2005). Section 34A–5–107 provides "the exclusive remedy under state law for employment discrimination based upon ... disability." *Id.* § 34A–5–107(15). "[T]he plain language of section 34A–5–107(15) reveals an explicit legislative intention to preempt all common law remedies for employment discrimination." *Gottling v. P.R. Inc.,* 2002 UT 95, ¶ 9, 61 P.3d 989. Any provisions in the State Human Resources Employee Handbook purporting to vest a probationary employee with additional contractual rights against discrimination would be contradictory to these statutory provisions-specifically the exclusivity mandate-and would necessarily be invalid.

¶ 11 For the foregoing reasons, we conclude Code failed to state a claim upon which relief can be granted. We affirm the trial court's dismissal of her amended complaint.

¶ 12 WE CONCUR: RUSSELL W. BENCH, Presiding Judge and CAROLYN B. McHUGH, Judge.