2001 UT 52

**Rebecca SCHUURMAN, Plaintiff and Appellant,**

v.

**Richard N. SHINGLETON, Defendant and Appellee.**

No. 990597.

Supreme Court of Utah.

June 22, 2001.

Mark C. McLachlan, David H. Schwobe, Salt Lake City, for plaintiff.

James W. Gilson, David L. Arrington, Salt Lake City, for defendant.

WILKINS, Justice:

¶ 1 Plaintiff brought an action against defendant, her former psychotherapist, for medical malpractice and intentional infliction of emotional distress. The district court granted defendant's motion for summary judgment, ruling that plaintiff's claim for medical malpractice was barred by the statute of limitations and that plaintiff had not alleged facts sufficient to state a claim for intentional infliction of emotional distress. We affirm.

## BACKGROUND[1]

¶ 2 In June 1988, plaintiff began treatment with defendant for depression and an eating disorder. Plaintiff saw defendant for a total of thirty-four formal sessions from June 1988 to February 1989. Shortly after plaintiff's last formal therapy session, plaintiff and defendant began a sexual relationship that lasted until June 1995.

¶ 3 Plaintiff filed a notice of intent to commence action on March 12, 1996, and filed her complaint on September 10, 1996. In plaintiff's complaint, she alleges that defendant mishandled the "transference"[2] that occurred during plaintiff's formal therapy. As

---

1. "On appeal from a grant of summary judgment, we present the facts in the light most favorable to the non-moving party." *Raile Family Trust v. Promax Dev. Corp.*, 2001 UT 40, ¶ 2, 24 P.3d 980.

2. "Transference is the term used by psychiatrists and psychologists to denote a patient's emotional reaction to a therapist and is 'generally applied to the projection of feelings, thoughts, and wishes onto the analyst, who has come to represent some person from the patient's past.'" *Simmons v. United States*, 805 F.2d 1363, 1364 (9th Cir.1986) (quoting *Stedman's Medical Dictionary* 1473 (5th Lawyers' ed.1982)).

a result of defendant's mishandling of this phenomenon, plaintiff claims that a "dual relationship," consisting of the therapist-patient relationship and the personal relationship, was created between defendant and herself. Plaintiff argues that through the dual relationship defendant continued to provide negligent treatment to her, even after formal therapy had terminated. These allegations are the basis for plaintiff's claim of medical malpractice.

¶4 Plaintiff's second claim, intentional infliction of emotional distress, is based on allegations that during the course of their relationship defendant made promises of marriage and financial security to plaintiff to manipulate and control her. Plaintiff also alleges that defendant made these promises with no intention of keeping them and with the knowledge that breaking such promises would cause plaintiff emotional distress.

¶5 Plaintiff complains that because of defendant's conduct, her marriage was destroyed, she has not sought proper treatment for her eating disorder and depression, she has experienced severe pain, suffering, and emotional distress, and she will incur damages in the future for counseling services.

¶6 Defendant moved for summary judgment. He argued that plaintiff's cause of action for medical malpractice was barred by the two-year statute of limitations in section 78–14–4 of the Utah Code. *See* Utah Code Ann. § 78–14–4 (1996). With respect to plaintiff's claim for intentional infliction of emotional distress, defendant argued that his conduct was not so outrageous as to support a claim for intentional infliction of emotional distress, and further, that plaintiff had no competent evidence to establish that defendant's conduct caused her emotional distress. The district court granted defendant's motion, finding that plaintiff's medical malpractice claim was time-barred and plaintiff's claim for intentional infliction of emotional distress failed as a matter of law.

¶7 On appeal, plaintiff argues that the district court erred in granting defendant's motion for summary judgment with respect to both of her claims. Plaintiff also claims that the district court violated rule 52 of the Utah Rules of Civil Procedure because the court did not provide a written statement of the ground for its decision.

## ANALYSIS

### I. RULE 52

¶8 We first address plaintiff's claim that the district court did not comply with rule 52 of the Utah Rules of Civil Procedure. Under rule 52, the court shall "issue a brief written statement of the ground for its decision on all motions granted under Rule[ ] ... 56." Utah R. Civ. P. 52(a). The purpose of the rule is to ensure that the parties have a written indication of the court's action and its underpinnings. To comply, the court need only include the basic essentials of the grounds upon which it relies. Although the district court's order in this case granting defendant's motion for summary judgment was indeed brief, it nonetheless was adequate and satisfied the requirements of the rule because it stated that the malpractice claim was barred by the statute of limitations and that the emotional distress claim was not supported by sufficiently alleged facts.

### II. MEDICAL MALPRACTICE CLAIM

¶9 The district court granted defendant's motion for summary judgment, ruling that plaintiff's claim for medical malpractice was barred by the two-year statute of limitations in section 78–14–4 of the Utah Code. In reviewing the district court's order granting summary judgment, we note that summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Utah R. Civ. P. 56(c). Furthermore, on appeal, "we give the court's legal decisions no deference, reviewing them for correctness, while reviewing the facts and inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Dairy Prod. Serv. v. City of Wellsville,* 2000 UT 81, ¶15, 13 P.3d 581.

¶10 To make out a cause of action for medical malpractice, the plaintiff must allege, and eventually prove, (1) the standard of care by which the doctor's conduct is to be measured, (2) breach of that standard by the

doctor, and (3) injury (4) proximately caused by the doctor's negligence. *See Dalley v. Utah Valley Regional Medical Center,* 791 P.2d 193, 194 (Utah 1990). In this case, plaintiff alleges that defendant incurred a duty towards her when he undertook to act as her psychotherapist, and that the duty continued during the course of the dual relationship of therapist and lover. Plaintiff alleges that defendant breached this duty of care by mishandling the transference element of the relationship.[3]

¶ 11 The injuries plaintiff alleges that she suffered as a result of both defendant's negligence and intentional infliction of emotional distress[4] are: "Her marriage was destroyed"; "she has not received proper treatment for her eating disorder and depression"; "severe pain and suffering and emotional distress"; and she "has been otherwise injured and damaged." Even assuming that the defendant owed plaintiff the duty she claims, and breached that duty as alleged, plaintiff's cause of action for medical malpractice fails when considering the alleged injuries she received at defendant's hand.

■ ¶ 12 The first injury alleged in plaintiff's complaint related to the medical malpractice claim is the destruction of plaintiff's marriage. However, this is not an injury for which plaintiff may recover under these circumstances. Plaintiff's complaint contains no allegation that in the course of his "treatment" of plaintiff, defendant made any attempt to assist her in the rehabilitation of her marriage, or for that matter, that correcting the damage to her marriage was at any time a topic of therapeutic action or discussion between them. No course of treatment, regarding her marriage is alleged by plaintiff. Therefore, plaintiff in this case may not recover for this injury as a matter of professional malpractice.

· ¶ 13 Moreover, even assuming that plaintiff would be able to prove all of the elements of the medical malpractice cause of action for her destroyed marriage, a claim arising from this injury is nevertheless barred by the statute of limitations in section 78–14–4 of the Utah Code. That section, in pertinent part, provides:

(1) No malpractice action against a health care provider may be brought unless it is commenced within two years after the plaintiff or patient discovers, or through the use of reasonable diligence should have discovered the injury, whichever first occurs, but not to exceed four years after the date of the alleged act, omission, neglect or occurrence....

Utah Code Ann. § 78–14–4 (1996).

¶ 14 It is undisputed that this injury, the destruction of plaintiff's marriage, occurred and was therefore certainly discovered more than two years before plaintiff brought this action in 1996. In March 1989, one month after the formal therapy sessions had terminated, and within weeks of plaintiff and defendant entering into their intimate relationship, plaintiff's husband found her another apartment, moved her and their children into the apartment, and filed for divorce. The alleged injury arising from defendant's professional care of plaintiff, the destruction of her marriage, must have been "discovered" not later than March 1989. Moreover, plaintiff must surely have been aware of this injury by that time. Therefore, the district court was also correct in ruling that plaintiff's medical malpractice claim is time-barred, since any application of the statute of limitations must have begun, as a matter of law, not later than March 1989.

■ ¶ 15 Plaintiff next claims that because defendant negligently mishandled the transference phenomenon, she has not yet received proper treatment for her eating disorder and depression, the conditions for which

---

3. We need not reach the question of whether or not, as a matter of law, plaintiff has alleged sufficiently the nature and duration of the duty undertaken by defendant as her therapist. For purposes of our analysis we assume these allegations to be sufficient, without deciding the underlying legal questions.

4. Plaintiff's complaint makes no distinction between the two causes of action in alleging injury and damages. As a result, we have had difficulty discerning which alleged injuries correlate to which cause of action. Furthermore, despite an invitation to do so, counsel for plaintiff was unable to clarify this issue during oral argument.

she initially sought professional help from defendant. However, plaintiff does not allege that her conditions were made worse by defendant's treatment, only that since plaintiff and defendant ended formal therapy, plaintiff has not received proper treatment, and that her distasteful experience with defendant has made her reluctant to seek therapy from other professionals.

¶ 16 This alleged injury is also insufficient as a matter of law to support a claim for medical malpractice under these circumstances. Neither party has suggested, nor has our own research discovered, any authority that supports the proposition that a psychotherapist's failure to cure an eating disorder or depression, without more, constitutes an injury on which a claim of professional malpractice may be based. Essentially, plaintiff alleges that her eating disorder and depression remain today in the same condition as when she first sought defendant's help. Absent allegations that defendant assured her of successful treatment, or failed where he should have succeeded, plaintiff's condition does not amount to an injury for purposes of her medical malpractice claim.

■ ¶ 17 Plaintiff's assertions regarding defendant's mishandling of the transference that arose between them, may, with sufficient proof, amount to malpractice for a psychotherapist. More specifically, mishandling of the transference phenomenon may amount to a breach of the standard of care, but the remaining elements of a malpractice action must still be met. *See, e.g., Zipkin v. Freeman*, 436 S.W.2d 753 (Mo.1968). Sufficient allegations of defendant's mishandling of the transference between him and plaintiff were before the trial court to avoid summary judgment. However, there was no adequate suggestion of any injury proximately caused by this negligent handling of the transference. Where no treatment was offered or expected for plaintiff's "damaged marriage," the mishandling of the transference in that regard is of no legal consequence. And where both an eating disorder and depression are conditions that may require lifetime therapy and still not be "cured," the failure of defendant to cure plaintiff during either the formal or the alleged dual relationship does not constitute

an injury for which medical malpractice may lie under the facts of this case without allegations and proof of more.

¶ 18 Plaintiff does not allege, and offers no proof, that her eating disorder or depression became worse as a result of defendant's negligence. Instead, plaintiff focuses on the admittedly uneven and ultimately unsuccessful relationship between her and defendant, facilitated by the transference and the special knowledge of plaintiff acquired by defendant during the formal therapy sessions. While defendant's actions in this regard, as alleged by plaintiff, were ethically and morally improper, they do not support an action for medical malpractice on these facts. No actionable injury has been alleged regarding the eating disorder or depression.

■ ¶ 19 Finally, plaintiff's claim that she experienced pain and suffering because of defendant's negligence, unassociated with any specific injury, is insufficient to support her claim for malpractice.

■ ¶ 20 Plaintiff argues that, under the "continuous negligent treatment" rule, her claim for medical malpractice was timely filed in 1996 because the statute of limitations in section 78-14-4 did not begin to run until June of 1995, when plaintiff and defendant broke all ties with one another. The continuous negligent treatment rule was recognized by this court in *Peteler v. Robinson*, 81 Utah 535, 550, 17 P.2d 244, 249 (1932). Under the rule, a course of treatment that is allegedly negligent "constitutes a single cause of action, and as such, the statute of limitations [does] not begin to run until the completion of the act giving rise to the cause of action, i.e., the negligent course of treatment." *Collins v. Wilson*, 1999 UT 56, ¶ 11 n. 9, 984 P.2d 960. Plaintiff maintains that through the dual relationship, defendant continued to act as her therapist and continued to provide her with negligent treatment until their relationship ended in 1995. Therefore, plaintiff asserts, the statute of limitations did not begin to run until June of 1995 and plaintiff's claim for medical malpractice was timely filed in 1996.

¶ 21 However, the continuous negligent treatment rule does not apply in this case.

Plaintiff's complaint contains no allegations that defendant continued to provide therapy to treat conditions resulting in either of her alleged injuries, plaintiff's eating disorder and depression, or her marriage difficulties, after their formal patient-therapist relationship ended and their personal relationship began. To the contrary, defendant's deposition presented as part of the motion for summary judgment, and not opposed by plaintiff, clearly indicates that defendant made no efforts to treat the eating disorder or depression after the formal therapy sessions ended. And as plaintiff alleges in her complaint, during her personal relationship with defendant, defendant made "numerous promises of marriage" to plaintiff, proposals that could not possibly be interpreted as intended to restore plaintiff's damaged first marriage. Thus, even assuming plaintiff can establish that defendant continued to treat her through their dual relationship, the continuous negligent treatment rule does not toll the statute of limitations in this case because the negligent treatment defendant allegedly continued to provide was not causally related to the conditions of which plaintiff now complains.

¶ 22 Therefore, the district court properly dismissed plaintiff's medical malpractice claim. Plaintiff has failed to allege the necessary injury to maintain her claim, and even if we apply the broadest interpretation to her allegations, any claim conceivably alleged was barred by the statute of limitations in section 78–14–4.

## II. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM

¶ 23 In *Samms v. Eccles*, 11 Utah 2d 289, 293, 358 P.2d 344, 347 (1961), this court adopted section 46 of the Second Restatement of Torts and held that a plaintiff is entitled to damages for intentional infliction of emotional distress

where the defendant intentionally engaged in some conduct toward the plaintiff, (a) with the purpose of inflicting emotional distress, or, (b) where any reasonable person would have known that such would result; and his actions are of such a nature as to be considered outrageous and intoler-

able in that they offend against the generally accepted standards of decency and morality.

This court has also said that " '[i]t is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery.' " *Gygi v. Storch*, 28 Utah 2d 399, 401, 503 P.2d 449, 450 (Utah 1972) (quoting Restatement (Second) of Torts § 46 cmt. h (1948)). Comment j of the Restatement further explains that, "[t]he law intervenes only where the distress inflicted is so severe that no reasonable [person] could be expected to endure it" and that "[i]t is for the court to determine whether, on the evidence severe emotional distress can be found." Restatement (Second) of Torts § 46 cmt. j (1948).

¶ 24 In this case, the district court granted defendant's motion for summary judgment, ruling that, as a matter of law, defendant's conduct toward plaintiff was not so outrageous and intolerable as to state a claim for intentional infliction of emotional distress. The district court further found that the injury suffered by plaintiff was not so severe that a reasonable person could not be expected to endure it, nor did plaintiff have competent evidence to establish that defendant's conduct caused her injury.

¶ 25 The district court was correct in granting defendant's motion for summary judgment. Whether defendant's conduct was outrageous or not, the alleged suffering that plaintiff has undergone in this case is not the type of distress that no reasonable person could be expected to endure. Plaintiff alleges that defendant's conduct, making promises of marriage and financial security with no intention of keeping them, made to manipulate plaintiff, caused her "severe pain and suffering and emotional distress." However unpleasant, the emotional distress that plaintiff alleges she suffered is indistinguishable from that commonly suffered by others when an intimate personal relationship fails. As such, it is not the type of emotional distress on which a claim for intentional infliction of emotional distress may be based. Furthermore, plaintiff's other injuries, general pain and suffering and a failed marriage, standing

alone, are not sufficient to support a claim for intentional infliction of emotional distress. Therefore, the district court was correct in granting defendant's motion for summary judgment.

## CONCLUSION

¶ 26 The injuries plaintiff alleges, that her marriage was destroyed, that she experienced pain and suffering, and that she did not receive proper treatment for her eating disorder and depression, are insufficient to support a claim for medical malpractice under the facts alleged in this case. Furthermore, plaintiff's claim for medical malpractice based on the destruction of her marriage or the failure to correct her eating disorder and depression, even if actionable, is barred by the two-year statute of limitations in section 78–14–4 of the Utah Code. Finally, plaintiff's claim for intentional infliction of emotional distress fails as a matter of law. The emo-

tional distress plaintiff alleges that she suffered is not of the type no reasonable person could be expected to endure. The district court's order granting summary judgment for defendant is therefore affirmed.

¶ 27 Chief Justice HOWE, Associate Chief Justice RUSSON, Justice DURRANT and Judge DAVIS concur in Justice WILKINS' opinion.

¶ 28 Having disqualified herself, Justice DURHAM does not participate herein. Court of Appeals Judge JAMES Z. DAVIS sat.